UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 17-10333-RGS

LSDP 15, LLC

v.

EAC ORGANICS, INC.

MEMORANDUM AND ORDER ON
PLAINTIFF LSDP LLC'S MOTION
FOR PARTIAL SUMMARY JUDGMENT

January 19, 2018

STEARNS, D.J.

Plaintiff LSDP 15, LLC (Lake Street) moves for summary judgment on a bento box of claims brought against defendant EAC Organics, Inc. (EAC) arising out of a lease of real property in Barnstable, Massachusetts. The court will deny the motion and, pursuant to Fed. R. Civ. P. 56 (f)(1), *sua sponte* grant summary judgment to EAC.

BACKGROUND

EAC owns the parcel and is the landlord for the current tenant, EAC's affiliate WeCare Organics LLC (WeCare), a seasonal landscaping and horticultural retail business on Cape Cod. In 2015, Lake Street approached EAC seeking to negotiate a long-term lease of the property to build a solar energy facility. EAC was amenable, and the parties negotiated a 20-year

lease commencing on December 1, 2015 – with two 5-year renewal options. As part of the Lease, Lake Street had the right to require that WeCare, the existing tenant, vacate the premises with 60-days' notice.

The Lease contained two provisions requiring Lake Street to begin construction on the property within 12 months (by December 1, 2016). Section 3.1 stated that:

> Nothing herein shall obligate the Lessee to construct, install or operate any Lessee Improvements on the Leased Property, provided, however in the event that the Lessee does not construct, install or operate any Lessee Improvements on the Leased Property on or before twelve (12) months from the Effective Date of this agreement . . . Lessor shall have the right to terminate this Lease Agreement upon ten (10) days written notice to the Lessee.

Section 4.2 provided that: "Lessor may terminate this Lease Agreement without being deemed in default and without further liability to Lessee if the construction phase of the Solar Development Project . . . has not begun on or before 12 months from the Effective Date of the Lease Agreement."

The Lease also contained an integration clause:

> 14.9 <u>Entire Agreement: Amendments.</u> This Lease Agreement constitutes the entire agreement between Lessor and Lessee respecting its subject matter. This Lease Agreement shall not be modified or amended except in a writing signed by both parties. No purported modifications or amendments, including, without limitation, any oral agreement (even if supported by new consideration), course of conduct or absence of a response to a unilateral communication, shall be binding on either party unless embodied in a written agreement signed by both parties.

2

Although Lake Street invested substantial time and financial resources acquiring the necessary permits for the solar energy project, for reasons that are disputed[1], in the fall of 2016, the parties began negotiating a modification of the date by which Lake Street was required to begin construction. In an email dated October 19, 2016, EAC wrote that "[a]s the schedule has pushed, we have to consider business timing issues with our existing operation [WeCare]." Pl.'s Statement of Material Facts (SOF), Dkt #31, ¶ 42. Lake Street argues that this email "is related to EAC having previously verbally informed Lake Street that EAC did not want WeCare's 2017 season to begin and be subject to Lake Street's right to require WeCare's lease be terminated with sixty (60) day [sic] notice." Pl.'s Mem. in Support of Summary Judgment, Dkt #30 at 6-7. It is unclear when this alleged "previous verbal agreement" took place, as Lake Street offers no non-hearsay evidence of the prior agreement.

---

[1] Lake Street argues that EAC was concerned about its existing tenant (WeCare) and wanted to ensure that it had a full season of business without the threat of disruption that would be triggered by Lake Street's right to require that WeCare vacate the property on 60-days' notice. EAC, on the other hand, argues that Lake Street had fallen behind on its construction schedule and likely could not have begun construction on the date for which it had originally bargained. As the court explains more fully below, the fact that there is a dispute over why the parties were in discussions for an extension of the lease deadlines is not relevant for summary judgment purposes because no written agreement to modify the contract was reached.

On November 16, 2016, business and legal representatives from both Lake Street and EAC spoke by telephone. In the ensuing conversation, Lake Street alleges that the parties reached an agreement to extend the construction deadline to July 1, 2017, in lieu of the initial date of December 1, 2016. As consideration for this alleged modification, Lake Street argues that it agreed to waive its right to provide WeCare with 60-days' notice to vacate (as provided in Section 1.8 of the Lease[2]). However, there is nothing in the record that supports the claim that an oral agreement was reached during this conversation, and EAC in its Answer and in its Memorandum in Opposition to Summary Judgment insists that no such agreement was reached. On November 21, 2016, Lake Street sent EAC a proposed

---

[2] Section 1.8 provided, in relevant part:

> . . . at Lessee's sole discretion, Lessee may also request that WeCare Organics, LLC's lease be terminated upon sixty (60) days written notice. Upon such written notice, Lessor shall ensure that WeCare Organics, LLC has ceased all use of the Leased Property and has removed all equipment or other personal property from the leased property. In the event that any conditions attributable to WeCare Organics, LLC impede Lessee's intended use of the Leased Property, at Lessee's sole discretion, (a) Lessee may allow WeCare Organics, LLC to remain on the Leased Property on a day-to-day basis but the parties shall extend all relevant deadlines in this Agreement for the same number of days that WeCare Organics, LLC remains on the Leased Property; or (b) following the notice period, Lessee may terminate this Lease Agreement and, in such event, Lessee shall surrender the Leased Property to Lessor.

Amendment to the Lease extending the construction start date from December 1, 2016, to July 1, 2017.

EAC never signed the Amendment. Instead, on November 28, 2016, EAC's legal representative sent an email to Lake Street's counsel stating that his client had "business concerns" with the proposed Amendment and proposing a conference call to discuss the matter. What occurred next is unclear. Lake Street alleges that EAC "cut off all communications with Lake Street and refused to respond to phone calls or emails from Lake Street," which EAC denies. *See* Answer, Dkt #11, ¶ 51; Def.'s Response to Statement of Facts, Dkt # 34, ¶ 59. When Lake Street did not begin construction by December 1, 2016, EAC sent Lake Street an overnight letter – dated December 13, 2016, and received on December 14, 2016 – in which it exercised its option to terminate the Lease pursuant to Section 4.2.

Lake Street then brought this lawsuit, seeking a declaratory judgment (Count 1) that EAC did not legally terminate the Lease and that Lake Street should have been permitted to begin construction on the solar facility by July 1, 2017, the date on which the parties allegedly agreed in the telephone call. Compl. ¶ 72. Lake Street also alleged breach of contract (Count II), breach of the implied covenant of good faith and fair dealing (Count III), promissory estoppel (Count IV), fraudulent misrepresentation (Count V), violation of

5

Mass. Gen. Laws ch. 93A (Count VI), and indemnification for losses under the terms of the Lease (Count VII).

Following discovery, Lake Street brought this Motion for Partial Summary Judgment as to Liability, Dkt #29, on all of its claims. EAC opposes Lake Street's Motion and, although it has not filed a cross-motion for Summary Judgment, argues in its Memorandum in Opposition that the court should "grant EAC summary judgment dismissing each of Lake Street's claims pursuant to authority granted to the Court by Fed. R. Civ. P. 56(f)(1) to search the record and award appropriate relief to a nonmovant." Dkt #33 at 5-6.

## DISCUSSION

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In evaluating a motion for summary judgment, the court draws "all reasonable inferences in favor of the non-moving party while ignoring

conclusory allegations, improbable inferences, and unsupported speculation." *Shafmaster v. United States*, 707 F.3d 130, 135 (1st Cir. 2013).

While a party must ordinarily file a motion for summary judgment in order to obtain such relief, a district court may grant summary judgment *sua sponte* to a nonmoving party provided two criteria are met. First, "the discovery process must be sufficiently advanced that the parties have enjoyed a reasonable opportunity to glean the material facts." *Sanchez v. Triple-S Mgmt. Corp.*, 492 F.3d 1, 7 (1st Cir. 2007) (internal quotation marks and citation omitted). Second, "the court may enter summary judgment *sua sponte* only if it first gives the targeted party appropriate notice and a chance to present its evidence on the essential elements of the claim or defense." *Berkovitz v. Home Box Office, Inc.,* 89 F.3d 24, 29 (1st Cir. 1996). "'Notice' in this context means that the losing party had reason to believe the court might reach the issue and received a fair opportunity to put its best foot forward," *Jardines Bacata, Ltd. v. Diaz-Marquez*, 878 F.2d 1555, 1561 (1st Cir. 1989), such that "the targeted party has an adequate opportunity to dodge the bullet." *Berkovitz*, 89 F.3d at 29.

The court finds both criteria met in this case. The question of whether the Lease was modified by an oral agreement, and whether EAC's termination complied with the terms of the Lease, have been the focus during

7

the entire pendency of the litigation. Furthermore, EAC argued in its Memorandum in Opposition that it should be entitled to summary judgment on the undisputed facts of the case. Given the relatively straightforward questions of contract law at issue, and given that both sides have had "an adequate opportunity to dodge the bullet," *Berkovitz*, 89 F.3d at 29, the court may appropriately grant summary judgment to either party pursuant to Fed. R. Civ. P. 56(f)(1).

Lake Street's primary argument rests on the alleged oral modification of the contract said to have been reached during a telephone conversation in November of 2016. Because EAC thereby agreed to extend the deadlines in the Lease, Lake Street argues, "EAC did not have the right to terminate the Lease." Pl.'s Mem. at 9, Dkt #30. However, the record provides no support for Lake Street's assertion that the parties reached a binding modification.

Even if there were some evidence that the parties reached an oral agreement that the provisions of the Lease would be extended and a new construction date established, this purported modification would contradict the terms of the fully-integrated Lease. The Lease explicitly provided that the Agreement "shall not be modified or amended except in a writing signed by both parties," and that "[n]o purported modifications or amendments, including, without limitation, any oral agreement . . . shall be binding on

8

either party unless embodied in a written agreement signed by both parties." No such writing exists. It is a rule of ancient origin that "[a]ny promise involving real property is enforceable only if that promise meets the requirements of the Statute of Frauds." *Schwanbeck v. Fed.-Mogul Corp.*, 412 Mass. 703, 709 (1992); *see also* Mass Gen. Laws. ch. 259, § 1 (2015) ("No action shall be brought . . . upon a contract for the sale of lands, tenements or hereditaments or of any interest in or concerning them . . . unless the promise, contract or agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or by some person thereunto by him lawfully authorized.").

This case presents a paradigmatic example of why the Statute of Frauds provides an important default rule in cases where claims come before the court "based on conversation which persons heard differently or remembered differently." *Michael A. Mentuck & Assocs., Inc. v. Lloyds Underwriting Syndicate No. 1209*, 2013 WL 783050, at *3 (D. Mass. Feb. 28, 2013) (internal quotation marks and citation omitted). Where there is no writing memorializing the conversation in question at all – much less a writing signed by both parties – courts will not disturb a fully-integrated contract simply because one party insists otherwise.

9

Because the court finds that no enforceable modification of the Lease occurred, the court can quickly dispose of Lake Street's related argument that under Section 1.8, the parties were required to "extend all relevant deadlines in this Agreement for the same number of days that WeCare Organics, LLC remains on the Leased Property." That provision, however, only applied "[i]n the event that any conditions attributable to WeCare Organics, LLC impede Lessee's intended use of the Leased Property." There is no evidence in the record that WeCare was impeding Lake Street's ability to begin construction. Indeed, the two parties were exchanging emails throughout the fall of 2016, and Lake Street retained the right under Section 1.8 to demand that WeCare vacate the property.

Lake Street's fallback argument is that, even if the court does not find that the parties reached a binding oral modification of the Lease, Lake Street was entitled to 60 days to "cure" its failure to timely begin construction by virtue of Section 9 of the Lease, which covers events of default. Section 9.1 provides that "the following events shall be deemed to be events of default by Lessee under this Lease Agreement," including (a) "Lessee shall fail to pay any amount payable under this Lease Agreement when due . . . " and "(b) Lessee shall fail to comply with any other term, provision or covenant of this Lease Agreement within sixty (60) days after written notice from Lessor to

Lessee, specifying Lessee's failure to comply . . . ." Thus, Lake Street argues, its failure to commence construction by December 1, 2016, must be read as a failure to comply with the pertinent lease provisions (Sections 3.1 and 4.2) that required Lake Street to begin construction within one year of the effective date of the Agreement. While it is possible to read "any other term, provision or covenant of this Lease Agreement" in Section 9.1(b) as applying to the lease provisions requiring timely construction, the court does not find this reading persuasive as a matter of contract law, for two reasons.

First, Section 4.2 merely gave the Lessor (EAC) the right to terminate the Lease, if it chose to do so, in the event that the Lessee did not begin construction by December 1, 2016. For this reason, Section 4.2 itself states that, in such event, "Lessor may terminate this Lease Agreement without being deemed in default and without further liability." Moreover, Section 3.1 gives the Lessee the right, but not the obligation, to commence construction by December 1, 2016 ("Nothing herein shall obligate the Lessee to construct, install or operate any Lessee Improvements on the Leased Property. . . ."). That section is silent on whether the Lessee's decision not to commence construction could be deemed an event of default under Section 9.2. Evaluating these two provisions together, the better reading is that because the Lessee was not obligated to begin construction on December 1, 2016, its

11

failure to do so cannot be considered an event of default under the Lease. This, in turn, explains Section 4.2 of the Lease, because if the Lessee had already defaulted the moment it failed to begin construction, there would be no reason for the Lessor to protect itself in Section 4.2 by emphasizing that its decision to terminate the Lease is not to be deemed an event of default.

Second, even if the failure to timely begin construction under Section 4.2 could properly be considered an "event of default" under Section 9.1, applying the 60-day cure period in Section 9 to the Lessor's right to terminate under Section 4.2 would read the 10-day notice period in the latter section out of the Lease entirely, rendering it superfluous. *See Summit Packaging Sys., Inc. v. Kenyon & Kenyon*, 273 F.3d 9, 12 (1st Cir. 2001) (noting that "it is a basic principle of contract law that constructions that render contract terms meaningless should be avoided").

Moreover, insofar as one might read the 60-day "cure" period for events of default as in tension with the 10-day notice period for termination to be effective under Section 4.2, "[a] common principle of contract construction is that a specific term will control over a conflicting general term," *Newharbor Partners, Inc. v. F.D. Rich Co.,* 961 F.2d 294, 299 (1992); *see also Arcari v. Marder*, 225 B.R. 253, 256 (D. Mass. 1999) ("Massachusetts case law follows the Restatement in requiring that any

inconsistency be resolved in favor of the more specific provisions."). Here, Section 4.2 is the more specific provision because it governs the precise question at issue – defining the rights of the respective parties if Lake Street did not begin construction by December 1, 2016.

The court concludes that EAC acted well within its contractual rights in terminating the Lease. Because there is no evidence that the parties reached a binding agreement to modify the Lease, and no evidence of bad faith on the part of EAC, Lake Street's remaining claims – breach of the implied covenant of good faith and fair dealing, promissory estoppel, fraudulent misrepresentation, and the 93A claim – also fail.

ORDER

Lake Street's Motion for Summary Judgment is <u>DENIED</u>, and the court <u>GRANTS</u> summary judgment to EAC. The Clerk is directed to enter judgment for EAC and close the case.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE